UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| KIMBERLY R. JOHNSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | 3:07-CV-96 (VARLAN/SHIRLEY) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the Plaintiff's Motion for Summary Judgment and Brief in Support [Docs. 10 & 11] and the Defendant's Motion for Summary Judgment & Memorandum in Support [Docs. 12 & 13]. Plaintiff Kimberly Johnson ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Commissioner.

On September 9, 2004, Plaintiff filed her application for supplemental security income payments, claiming disability as of March 31, 2003 (Tr. 20). After her application was denied initially and upon reconsideration, Plaintiff requested a hearing. On August 22, 2006, a hearing was held before an Administrative Law Judge ("ALJ") to review determination of Plaintiff's claim (Tr. 250-265). At this hearing, Plaintiff amended her alleged onset of disability to July 30, 2003 (Tr. 20). On September 12, 2006, the ALJ found that Plaintiff was not disabled because she has the residual

functional capacity to perform a reduced range of light work activity (Tr. 22).[1] The Appeals Counsel denied Plaintiff's request for review (Tr. 5-7), and the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ Findings

The ALJ made the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act through September 30, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since July 30, 2003, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine. (20 C.F.R. § 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1.
>
> 5. The undersigned finds that the claimant has the residual functional capacity to perform light work activity allowing an alternate sit/stand option that requires no more than "occasional" climbing, balancing, stooping, kneeling, crouching, and crawling, and that requires no more than "frequent" movement of the neck from side to side or up and down.
>
> 6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

---

[1] Light work requires lifting and carrying 20 pounds occasionally and 10 pounds frequently. See 20 C.F.R. § § 404.1567(b) and 416.967(b).

> 7. The claimant was born on January 18, 1967 and was 36 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 C.F.R. 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c) and 404.1566).
>
> 11. The claimant has not been under a "disability," as defined in the Social Security Act, from July 30, 2003 through the date of this decision.

(Tr. 22-24).

## II.     Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age,

3

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, she is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> 5. Even if claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.150). Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.    Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005).

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).

### IV.    Arguments

Plaintiff argues on appeal that substantial evidence does not support the decision of the ALJ because the ALJ erred in failing to (1) find her obesity to be a severe impairment and (2) consider the impact of Plaintiff's obesity on her ability to work in conjunction with her degenerative disc disease [Doc. 11]. Plaintiff further argues if this Court determines the final decision of the Commissioner should not be reversed, in the alternative, she requests this Court to remand her case for further proceedings under sentence six of 42 U.S.C. § 405(g) to consider new evidence which came to light days after the ALJ issued his decision.

The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff retained the residual functional capacity to perform light work [Doc. 13]. The Commissioner argues that an ALJ is not required to make findings as to the severity of all impairments, but only needs to determine at step 2 of the sequential evaluation process whether a claimant's impairment(s), either individually or in combination, are "severe." The Commissioner further argues a remand pursuant to sentence six of 42 U.S.C. § 405(g) is not appropriate because the additional evidence Plaintiff wishes to offer is not material and Plaintiff cannot show that, in light of the new evidence, there is a "reasonable probability" that the ALJ would have reached a different conclusion on the issue of disability if shown the additional evidence earlier.

> **A.** *Failure to Consider Plaintiff's Obesity to be Severe and its Impact on her Ability to Work*

Plaintiff was born on January 18, 1967 (Tr. 251). She has had various skilled and unskilled jobs as a switchboard operator, receptionist, child care provider, cook, cashier, and deli clerk (Tr. 252-53). She testified she stopped working in March 2003 because of pain in the neck, shoulder and hip area, numbness in her hands and fingers, lack of a ability to grip items with her hands, and mild headaches (Tr. 251-62). Plaintiff's obesity is an overarching factor in her disability claim. During the time of her treatment she is 5'7" and was noted to weight 300+ pounds (Tr. 158). In one medical report, she is referred to as "morbidly obese" (Tr. 142) and one doctor acknowledged her pain may be "due to her weight" (Tr. 130).

In this case, Plaintiff contends the ALJ erred when he failed to find her obesity to be severe at step 2 and consider its impact on her other impairments and her ability to work. Each objection will be discussed in turn.

### 1. **Obesity**

Plaintiff argues the ALJ's failure to consider her obesity in combination with her severe musculoskeltal impairments results in his residual functional capacity determination ("RFC") not being supported by substantial evidence. The Commissioner responds the ALJ did not err as he found one of Plaintiff's impairments to be severe at step 2 and then completed the sequential evaluation, considering all of Plaintiff's impairments in making his determination.

This Court finds Plaintiff's argument that the ALJ's failure to consider her morbid obesity to be a severe impairment was in error unpersuasive. As the government points out, the Sixth Circuit has stated "[a]ccording to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined" by 20 C.F.R. § 404.150. Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). In the Maziarz case, the Sixth Circuit found that since the Secretary "found that [claimant] suffered from the severe impairments of coronary artery disease, status post right coronary artery angioplasty and angina pectoris," the Secretary "continued with the remaining steps in his disability determination" and thus "properly could consider claimant's cervical condition in determining whether claimant suffered residual functional capacity to allow him to perform substantial gainful activity." Id.

In the case before the Court, the ALJ found that Plaintiff had "the following severe impairments: degenerative disc disease of the cervical and lumbar spine" because "the above impairments cause more than a minimal reduction in the claimant's ability to function; therefore, they are severe impairments" (Tr. 22). The ALJ then continued with the required sequential analysis as required the by regulations (Tr. 22-24). Furthermore, the ALJ's findings as to step 2 is favorable

7

to Plaintiff. Plaintiff passed step 2 because the ALJ found she had a severe impairment, which allowed the ALJ to continue the sequential analysis. Therefore, the ALJ has not committed reversible error in not identifying obesity as a severe impairment.

### 2. Failure to Consider Impact of Obesity on Plaintiff's Ability to Work

Next, the Court must consider Plaintiff's contention that the ALJ improperly analyzed her obesity, by failing to mention it in his decision, and its impact on her other impairments and her ability to work. Plaintiff contends that the ALJ committed error by failing to follow the procedure outlined in Social Security Ruling 02-01p. However, the Sixth Circuit has stated that "Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations." Bledsoe v. Barnhart, No. 04-4531, 2006 WL 229795, at * 3 (6th Cir. Jan. 31, 2006). Furthermore, the Sixth Circuit has stated that "it is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants." Id.

This Court does not dispute that the Sixth Circuit recognizes "that obesity can cause a person to be disabled, especially when in concert with other factors." (Plaintiff's Brief at 10 citing Johnson v. Sec'y of Health & Human Servs., 794 F.2d 1106, 1112-14 (6th Cir. 1986)). However, this Court reminds Plaintiff of the language of 20 C.F.R. § 404.1512(a), which states that the Social Security Administration will consider impairments "you say you have or about which we receive evidence." In this case, Plaintiff asserts that because her medical reports indicated she suffered from obesity, the ALJ was required to consider it as a possible impairment (Tr. 142-43; 166; 205). The issue with that argument is that the ALJ never received evidence suggesting Plaintiff's treating physicians regarded her weight as an impairment to her ability to work. The record does not suggest that Plaintiff's obesity limits her ability to work, notwithstanding the unfortunate difficulties she has had

in undergoing medical treatment ("because of patient's morbid obesity and body habitus, even with the patient's shoulders taped town, it was vary difficult to image the C7 level") (Tr. 189). The non-treating state physicians, Dr. Pennington and Dr. Burr, reported that Plaintiff, despite her obesity, could perform a full range of light work and medium work, respectively (Tr. 178-85; 215-22), and the ALJ found functional limitations even more restrictive than those suggested by the non-treating state physicians (Tr. 22). Moreover, Plaintiff provided no evidence that obesity affected her ability to work, or that it prevented her from doing the light work which the ALJ found she was capable of doing. Furthermore, 20 C.F.R. § 404.1512 (a) requires Plaintiff to "furnish medical and other evidence that [the SSA] can use to reach conclusions about [her] medical impairment(s) and ... its effect on [her] ability to work on a sustained basis." Mere reference to a medical (or anatomical) condition is not sufficient. Plaintiff did not satisfy this requirement with respect to an obesity claim. Under these circumstances, the ALJ had no obligation to address Plaintiff's obesity in his decision.

### B. *Sentence Six Remand*

Sentence six of 42 U.S.C. § 405(g) provides that a court "may at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding..." A sentence six remand is comparable to a Fed.R.Civ.P. 60(b) motion for a new trial based on newly discovered evidence. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 243 (6th Cir. 2002).

New evidence is considered "material" if the claimant can "demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff contends the new evidence in this case includes the updated

9

treatment records of Dr. Johnson, dated November 3, 2005 through January 29, 2007, and the results of an exam conducted by Dr. Loaiza on September 27, 2006 [Doc. 11]. Plaintiff specifically points to a treatment record of Dr. Johnson, dated September 14, 2006, just two days after the ALJ issued his ruling in this case. Plaintiff argues this evidence is "new" since it was not available to review by the ALJ at the time of the administrative hearing. Plaintiff argues the evidence is material because had the ALJ had the assessment of Plaintiff's treating physician as well the MRI evidence, he "may very well have reached a different conclusion regarding Plaintiff's disability" [Doc. 11].

While Plaintiff is correct that Drs. Johnson and Loaiza's reports are new, she is wrong when she argues they are material. This Court finds it is not likely that these new medical reports would have caused the ALJ to reach a different conclusion. One of the updated treatment records by Dr. Johnson reports Plaintiff is unable to lift/carry any weight due to her impairment; can stand, walk, and sit with no problem; cannot knee, balance, crouch, or crawl; can climb and/or stoop only 1/5 of an eight-hour day; and is limited in her ability to reach, handle, feel, and push/pull (Tr. 223-24). However, Dr. Johnson never opined that Plaintiff cannot work due to her physical limitations and his blanket statement of inability to lift/carry any weight is contrary to all the medical findings, has no basis in any objective medical tests, and is belied by Plaintiff's own testimony (Tr. 257, 261). It even appears contrary to his objective findings of the same date (Tr. 230). His findings on January 29, 2007 also indicate she is in no acute distress, denies joint stiffness, back pain, neck pain, or virtually any difficulties, and was only given educational materials (Tr. 227-28). Additionally, the ALJ determined Plaintiff's ability to work is greatly reduced, thus finding her capable of only a "reduced range of light work activity" (Tr. 24).

The records provided from Dr. Loaiza report Plaintiff's subjective complaints, past medical history and treatment, and noted that her range of motion in her neck is limited as well as she suffers

from paresthesias in both hands, especially on the right side (Tr. 245-47). Additionally, the records reveal Dr. Loaiza conducted an MRI of the cervical spine on November 1, 2007, which revealed degenerative changes at C5-6 and C6-7, with abnormal loss of disc material and loss of disk height (Tr. 248). Dr. Loaiza's impression was listed as "postsurgical change at C6-7 with apparent recurrent ostcphyte formation on the right with right-sided neural foremen stenosis" and "diffuse disc bulge at C5-6 with right-sided neural foremen stenosis" (Tr. 248). However, he noted few abnormal examination findings (Tr. 248).

Furthermore, the evidence presented to the Court for consideration further demonstrates a number of inconsistencies regarding Plaintiff's subjective complaints and supports the ALJ's determination that she lacks credibility. The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 23). The record supports that Plaintiff initially stated that as a result of a diskectomy and fusion at the C6-7 disc level, she reported a "dramatic" improvement in her pain (Tr. 23) and that Plaintiff also reported "improvement with physical therapy" (Tr. 23). Yet, Plaintiff now claims that the surgery did not help her neck pain and she told Dr. Loaiza as much when she went in for a consultation (Tr. 247). The new proposed evidence also highlights that in a January 2007 visit to Dr. Johnson, Plaintiff denied "weight changes, ... neck pain, swellings, or stiffness, ...joint stiffness, back pain, muscle cramps" (Tr. 228), yet wants to put forth evidence of treatment notes of Dr. Johnson which she alleges reflect continuing treatment for "low back pain, joint pains, ... muscle spasms" (Plaintiff's Brief at 12). Because this evidence highlights Plaintiff's inconsistent complaints and lack of credibility, it would likely not change the ALJ's decision and is therefore not material.

Beyond the materiality problem, Plaintiff has failed to establish "good cause" for submitting untimely medical reports from Dr. Johnson. In <u>Willis v. Sec'y of Health & Human Servs.</u>, 727 F.2d

551, 554 (6th Cir. 1984), the Court held that in order to "show good cause," the complainant must give a valid reason for failing to obtain evidence prior to the hearing. Plaintiff contends that she could not submit the evidence before the hearing because the evidence did not exist at the time of hearing. In the case of Dr. Johnson's treatment notes, Plaintiff states that she was being treated by Dr. Johnson prior to the ALJ rendering his decision starting in November 2005. She and the attorney who represented her had months to prepare for the hearing. If any of these notes were vital to her case, Plaintiff or her attorney could have sought the reports earlier and provided them to the ALJ. Plaintiff or her attorney could have contacted Dr. Johnson or visited his office if the reports were important to her case. Furthermore, Plaintiff could have notified the ALJ that additional evidence was forthcoming in the case of the September 14, 2006 medical treatment report. Plaintiff could have informed the ALJ she was seeing her treating physician and believed her symptoms had gotten worse, thus wished to supplement the record. This option was available to her, but she did not take it and she must live with the consequences. See Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 149 (6th Cir. 1996) (finding that failure to notify an ALJ at or following the hearing regarding the need to consider additional medical evidence prevented a claimant from later asserting good cause to submit new evidence).

## IV.     Conclusion

Accordingly, the Court finds that the ALJ properly reviewed and weighed all of the medical source opinions and Plaintiff's credibility to determine he is capable of performing past relevant work. Substantial evidence supports the ALJ's findings and conclusions. Furthermore, remand is

inappropriate in this case under sentence six. Therefore, it is hereby **RECOMMENDED**[2] that the Plaintiff's Motion For Summary Judgement [Doc. 10] be **DENIED** and that the Commissioner's Motion for Summary Judgment [Doc. 12] be **GRANTED**.

                                      Respectfully submitted,

                                      <u>  s/ C. Clifford Shirley, Jr.  </u>
                                      United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).